ORIGINAL



1    JERROLD ABELES (SBN 138464)
     ARENT FOX LLP
2    555 W. Fifth Street, 48th Floor
     Los Angeles, CA 90013
3    Telephone: 213-629-7400
     Facsimile: 213-629-7401
4    E-mail: abeles.jerry@arentfox.com

5    Attorneys for Plaintiff
     SD-3C, LLC
6

E-FILING
ADR FILED
JAN 25 2012
RICHARD W. _____
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

7

8            UNITED STATES DISTRICT COURT

9        NORTHERN DISTRICT OF CALIFORNIA

10             SAN JOSE DIVISION

11

PSG

12    SD-3C, LLC, a Delaware limited      Case No. **CV 12-00407**
     liability company,
13                              **COMPLAINT FOR BREACH OF**
            Plaintiff,                **CONTRACT, FRAUD,**
14                                  **INFRINGEMENT OF FEDERALLY**
     v.                               **REGISTERED TRADEMARKS,**
15                                  **AND UNFAIR COMPETITION**
     BIWIN TECHNOLOGY LTD., a
16    Hong Kong limited liability
     company,
17
            Defendant,
18
19    and

20    WINTEK ENTERPRISES LTD., a
     Hong Kong limited liability
21    company,

22             Defendant.

23

24                       **COMPLAINT**

25        Plaintiff SD-3C, LLC ("SD-3C"), by and through its undersigned counsel,

26    hereby files this Complaint against Defendants Biwin Technology Ltd. ("Biwin")

27    and Wintek Enterprises Ltd. ("Wintek") (collectively, "Defendants"). In support

28    thereof, SD-3C states as follows:

                                    CIVIL COMPLAINT FOR BREACH OF
                                    CONTRACT AND INFRINGEMENT

## PARTIES

1.   SD-3C is a limited liability company organized under the laws of the State of Delaware, with its principal place of business located c/o Miller, Kaplan, Arase and Co., LLP, 180 Montgomery Street, Suite 1840, San Francisco, CA 94104.

2.   On information and belief, Biwin is a limited liability company organized under the laws of Hong Kong, with its principal place of business located at Unit 515A, 5/F, Tonic Industrial Centre Block B, 19 Lam Hing Street, Kowloon Bay, Hong Kong.  Among other things, Biwin manufactures and sells high-density memory cards.

3.   On information and belief, Wintek is a limited liability company organized under the laws of Hong Kong, with its principal place of business located at Unit 515B, 5/F, Tonic Industrial Centre Block B, 19 Lam Hing Street, Kowloon Bay, Hong Kong.

4.   On information and belief, Wintek is an alter ego of Biwin: the Defendants occupy adjoining office space in Hong Kong and a common manufacturing operation in Shenzhen, China; the Defendants share interlocking directorates and the same principal shareholders; the Defendants hold themselves out to the public as "the same company"; and orders for products placed by customers with Biwin are fulfilled by Wintek and *vice versa*.

## JURISDICTION AND VENUE

5.   This is an action for breach of contract, fraud, infringement of a federally registered trademark under 15 U.S.C § 1051 *et. seq.*, violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a), and unfair competition under Cal. Bus. & Prof. Code §17200.  This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1338(a), and 28 U.S.C. § 1338(b).  This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 based on diversity of citizenship because Plaintiff and Defendants are, respectively, citizens of a State

CIVIL COMPLAINT FOR BREACH OF
CONTRACT AND INFRINGEMENT

1    and citizens or subjects of a foreign state and the amount in controversy exceeds

2    $75,000 exclusive of interest and costs. Venue in this Court is proper under 28

3    U.S.C. § 1391(c) because Defendants have expressly consented to the personal

4    jurisdiction of this Court.

5    **INTRADISTRICT ASSIGNMENT**

6    6.   The parties' contracts contain a dispute resolution clause, which requires

7    that any dispute between the parties arising under the contracts shall be resolved by

8    the federal or state courts located in Santa Clara County.

9    **FACTUAL BACKGROUND**

10    7.   SD-3C licenses, for the convenience of manufacturers and sellers, the

11    essential patents necessary to the non-infringing implementation of the proprietary

12    SD memory card specification and related intellectual property; has developed the

13    SD memory card market, and promoted the adoption of SD technology. All

14    licensed SD cards must meet the SD Group specifications. Additionally, SD-3C

15    holds and licenses relevant trademark and design patents for SD technologies.

16    8.   In order to manufacture and sell SD memory cards that meet the SD

17    specifications, a prospective manufacturer must obtain a license for the essential

18    patents, which SD-3C has made available for the convenience of licensees. SD

19    memory cards cannot be manufactured without infringing essential patents unless

20    the prospective user first obtains the required licenses. As a convenience for

21    prospective users of the SD technology, SD-3C makes available licenses of the

22    necessary patent rights through an SD Memory Card License Agreement (the

23    "CLA"). The CLA also grants to the licensees a right to use various trademarks

24    containing the letters "SD" on such products (collectively, the "SD Trademarks").

25    In consideration for the rights granted under the CLA, licensees must pay SD-3C an

26    agreed royalty and annual administrative fee:

27       In consideration of the licenses granted hereunder, upon the terms and

28       conditions and with the limitations set forth herein, Licensee agrees to pay to

CIVIL COMPLAINT FOR BREACH OF<br>CONTRACT AND INFRINGEMENT

1        Licensor…an Administrative Fee and a Royalty, as set forth in each

2        applicable subpart of Schedule E (i.e., Schedules E-1, E-2, and/or E-3), for

3        the term of the Agreement.

4   CLA § 7.1.

5        9.   Biwin entered into a CLA with SD-3C in April 2006, which granted

6   Biwin the right, subject to the terms of the license, to use the technology required to

7   make, use, and sell SD memory cards and to use the various SD Trademarks in

8   exchange for an agreed royalty and administrative fee.

9        10.  Wintek entered into a CLA with SD-3C in May 2010, which granted

10   Wintek the right, subject to the terms of the license, to use the technology required

11   to make, use, and sell SD memory cards and to use the various SD Trademarks in

12   exchange for an agreed royalty and administrative fee.

13        11.  CLA Schedule E-1 (SD Memory Card Royalty and Annual Fee for SD

14   Flash Memory Cards) provides that Defendants agreed to pay SD-3C a six percent

15   (6%) royalty on the first thirty million (30,000,000) SD Flash Memory Cards, and a

16   four and a half percent (4.5%) royalty on all additional cards, that each company

17   sold, used, transferred, or otherwise disposed of under the terms of the Agreement.

18   Defendants also agreed to pay an annual administrative fee of $2,000 to SD-3C.

19        12.  Pursuant to Section 7.5 of the CLA, Defendants agreed on a quarterly

20   basis to provide SD-3C with a royalty report and to make appropriate royalty

21   payments.  Section 3 of Schedule E-3 of the CLA further provides that Defendants

22   must pay interest of five percent (5%) per month per late payment of the royalties

23   owed.

24        13.  Defendants are required under the CLA to keep and maintain detailed

25   and accurate books and records with regard to its sales information and royalty

26   calculations.  SD-3C retained the right to review and audit Defendants' books to

27   ensure compliance with their payment obligations under the agreement.  The CLA

28   expressly provides that:

CIVIL COMPLAINT FOR BREACH OF
CONTRACT AND INFRINGEMENT

1       Licensee shall keep and maintain detailed and accurate books and

2       records with regard to Licensed Sales, Royalty, and calculation

3       thereof.  Licensor and its representatives shall be entitled to review

4       and audit such books and records . . . and/or compliance with this

5       Section 7… [and that] Licensee shall bear any such expense if the

6       review or audit shows an underpayment of more than five percent

7       (5%) for the applicable period.

8   CLA § 7.6.

9       14.  Pursuant to Section 15.6 of the CLA, Defendants each expressly

10  submitted to the personal jurisdiction of this Court to resolve any dispute arising

11  under the license agreement with SD-3C and agreed to accept service of process in

12  any such dispute by mail or personal delivery.

13  **FACTUAL ALLEGATIONS - BIWIN**

14      15.  Pursuant to the CLA, Biwin submitted quarterly reports to SD-3C

15  starting in 2Q 2006.  During the period that Biwin was a licensee under the CLA

16  (2Q 2006 through 2Q 2009), Biwin reported modest SD card sales and almost no

17  microSD card sales.  Biwin consistently reported approximately $35,000 in

18  quarterly sales and approximately $2,200 in royalties payable to SD-3C.  A

19  complete list of Biwin's Quarterly Royalty Report Forms is attached hereto as

20  Exhibit 1.

21      16.  In October 2008, SD-3C's representatives from Miller, Kaplan, Arase

22  & Co., LLP conducted an audit of Biwin's books and records for the period April 1,

23  2006 through September 30, 2008 to confirm whether Biwin was properly reporting

24  its net sales and making all of the royalty payments that were due to SD-3C under

25  the terms of the CLA.

26      17.  Although required by CLA § 7.6 to keep and maintain accurate books

27  and records, Biwin did not provide complete financial statements or records to SD-

28  3C's auditors.  Biwin refused to provide original entry books, shipping documents,

CIVIL COMPLAINT FOR BREACH OF
CONTRACT AND INFRINGEMENT

1  sales orders, purchase orders, or other records that would permit a thorough
2  evaluation of Biwin's actual SD card and microSD card sales activities.  Indeed,
3  Biwin's Finance Director provided only "proforma invoices," which were
4  generated from an Excel spreadsheet file rather than from an accounting software
5  program.  The Finance Director informed the audit staff that "all other records were
6  destroyed." The destruction of financial records relating to the sale of SD cards is a
7  material violation of Section 7.6 of the CLA.

8      18.  The proforma invoices related to SD card sales that were provided to
9  SD-3C's auditors were neither signed nor stamped by Biwin personnel.  This is in
10  stark contrast to the auditors' review of selected non-SD card sales transactions
11  reflected in Biwin's Total Sales Registers, all of which bore an approval signature
12  by Biwin's sales personnel.  When confronted with this inconsistency in its
13  recordkeeping, Biwin's personnel conceded that salespeople "did not want to be
14  responsible for SD card sales."

15      19.  The auditors observed SD cards displayed in Biwin's lobby area bearing
16  company names like Stocrin, Datawrite, Bigben, Cosopt, Orkut, and Linktech.
17  None of these companies' names appeared in any of the proforma invoices
18  provided to SD-3C's auditors, nor were they listed in Biwin's Total Sales Register.
19  In fact, the Total Sales Register only identified sales of SD cards to three customers
20  over a two and a half year period.  When the auditors inquired about the displayed
21  SD cards bearing these other companies' names/affiliations, Biwin was unable to
22  provide any information other than that the cards were "display items."

23      20.  When SD-3C's auditors requested confirming sales information from
24  the three customers listed in Biwin's Total Sales Register as having purchased SD
25  cards from Biwin, the auditors received no response.

26      21.  The auditors identified irregularities in the unit prices for certain SD
27  card sales transactions.  The auditors concluded that Biwin underreported its sales
28  of cards manufactured with consigned materials.  After reviewing Biwin's royalty

CIVIL COMPLAINT FOR BREACH OF
CONTRACT AND INFRINGEMENT

1  reports, the average sales prices from the sales of completed SD cards, and the fair

2  market value of commoditized flash memory components, the auditors estimated

3  that Biwin's under-reporting of sales for SD cards manufactured with consigned

4  materials was $24,665, which translates into under-reported royalties totaling

5  $1,480 during the audit period.

6      22.  SD-3C representatives met with Biwin executives in April 2009 to

7  discuss their concerns about the audit results, particularly with regard to Biwin's

8  inadequate and destroyed records.  Biwin executives disputed any adverse findings

9  or conclusions in the audit, but refused to provide any further records or support for

10  their positions.

11      23.  On June 22, 2009, SD-3C notified Biwin that its CLA would be

12  terminated in 60 days unless Biwin agreed to make all of its financial records

13  available for inspection, without restraint, from the inception of the CLA through

14  March 31, 2009.   A copy of SD-3C's Notice of Termination is attached hereto as

15  Exhibit 2.

16      24.  Biwin refused to provide its financial records for SD-3C's auditors, and

17  Biwin's CLA was terminated effective August 22, 2009.  On August 25, 2009, SD-

18  3C sent Biwin a letter confirming its termination as a licensee and directing Biwin

19  to immediately return to SD-3C all copies of the SD Group Specification Books

20  and the SD Logo Guideline in its control or possession, and to destroy any

21  electronic copies of those materials as might exist on Biwin's computers or servers

22  pursuant to CLA § 14.2.  Biwin refused to comply with this demand, which

23  constitutes an additional, material breach of the CLA.  A copy of this August 25,

24  2009 letter is attached hereto as Exhibit 3.

25      25.  On at least four occasions, U.S. Customs has seized shipments of SD

26  cards and microSD cards manufactured by Biwin.  During the period Biwin was a

27  licensee (prior to its termination, effective August 22, 2009), U.S. Customs seized

28  three shipments of cards manufactured by Biwin that appeared to be counterfeit

CIVIL COMPLAINT FOR BREACH OF
CONTRACT AND INFRINGEMENT

1   (SD logos did not conform to requirements or appear to have been applied by a

2   licensee). Although some of these seized shipments were eventually released, these

3   sales were not properly reported on Biwin's royalty reports.

4       26. An additional shipment of SD cards manufactured by Biwin was seized

5   by U.S. Customs on May 12, 2010—nine months *after* Biwin's CLA was

6   terminated.

7       27. On information and belief supported by SD-3C's review and audit of

8   other licensees' highly confidential financial records, Biwin continues through the

9   present to import SD cards and microSD cards into the United States, despite the

10  fact that it has not been licensed to manufacture, sell, or distribute SD cards and

11  microSD cards *anywhere* since August 2009 (except to sell its then-remaining

12  inventory as of August 2009, and only then on the express condition that it was to

13  report sales and pay royalties, which was not done). The scope of Biwin's exports

14  of SD cards and microSD card into the United States is presently unknown and will

15  be the subject of discovery in this litigation.

16      28. In recent years, Biwin has been an exhibitor at COMPUTEX TAIPEI,

17  the world's second largest computer and technology exhibition, and at other trade

18  shows in Asia. Biwin has been observed displaying its SD memory cards and

19  related products at these exhibitions and trade shows, even after SD-3C terminated

20  its CLA.

21      29. After SD-3C's representatives observed Biwin displaying SD memory

22  cards at COMPUTEX TAIPEI 2010, a member of SD-3C's audit team placed

23  anonymous orders of 700 SD cards with Biwin for delivery in the United States.

24  Biwin fulfilled the order by making the delivery through Wintek, which Biwin's

25  sales representative described as Biwin's "separate card business." A copy of the e-

26  mail exchanges between SD-3C's auditor and Biwin's sales representative and the

27  invoices accompanying the deliveries (on Wintek letterhead) are attached hereto as

28  Exhibit 4.

CIVIL COMPLAINT FOR BREACH OF
CONTRACT AND INFRINGEMENT

30.   Attached hereto as Exhibit 5 are two invoices from September 2011 showing $163,675 in SD card sales from Biwin to Centon Electronics, Inc., in Aliso Viejo, CA.  These invoices confirm that Biwin is making SD card sales to customers in the United States.  The scope of Biwin's exports of SD cards and microSD card into the United States is presently unknown and will be the subject of discovery in this litigation.

31.   SD-3C's Chinese counsel commissioned a private investigation of Biwin, which investigation was conducted in 2010.  As a result of this investigation, SD-3C discovered that Biwin continues to manufacture SD, miniSD, and microSD memory cards on a very large scale.  Biwin's principal manufacturing facility in Shenzhen, China is estimated to have a production capacity of 30,000 or more cards *per day.*

32.   As a result of SD-3C's 2008 audit and its subsequent investigative efforts, SD-3C believes that Biwin is selling illegally tens of millions of dollars worth of unlicensed SD memory card products around the world, including to customers in the United States.

## FACTUAL ALLEGATIONS - WINTEK

33.   In May 2010, Wintek approached SD-3C and sought a license to manufacture and sell SD memory cards and memory card products.  SD-3C and Wintek executed a CLA on May 25, 2010.  At the time Wintek approached SD-3C, Wintek did not reveal or otherwise disclose its affiliations with Biwin, which had been terminated as a licensee only a few months before.

34.   Pursuant to the CLA, Wintek submitted quarterly reports to SD-3C starting in 2Q 2010.  During the period that Wintek was a licensee under the CLA (2Q 2010 through 3Q 2011), Wintek consistently reported approximately $300,000 in quarterly sales and approximately $20,000 in royalties payable to SD-3C.  A complete list of Wintek's Quarterly Royalty Report Forms is attached hereto as Exhibit 6.

CIVIL COMPLAINT FOR BREACH OF
CONTRACT AND INFRINGEMENT

35.  Shortly after executing the CLA with Wintek, SD-3C grew concerned that Wintek was related (if not identical) to Biwin, a recently terminated licensee. These suspicions were initially confirmed by a June 2010 purchase of SD cards from Biwin that was fulfilled by Wintek. (See Para. 29 above.)  SD-3C's suspicions were additionally confirmed after reviewing public corporate records in Hong Kong that identify four individuals who are the directors and principal shareholders of both companies and a shared address for both businesses.

36.  In October 2010, representatives from Miller, Kaplan, Arase & Co., LLP attempted to audit Wintek's books and records, but could not complete the audit due to numerous missing records and because Wintek personnel could not find keys to open an office that it was purportedly renting where documents were maintained.

37.  On October 26, 2010, and again on December 8, 2010, SD-3C representatives met with Wintek personnel to discuss Wintek's sales records and to inquire about Wintek's relationship with Biwin.  Wintek blamed sales representatives and accountants for poor records and refused to offer any coherent response to inquiries about Wintek's relationship with Biwin.

38.  In April 2011, SD-3C's representatives from Miller, Kaplan, Arase & Co., LLP made a second attempt to conduct an audit of Wintek's books and records for the period May 19, 2010 through March 31, 2011 to confirm whether Wintek was properly reporting its net sales and making all of the royalty payments that were due to SD-3C under the terms of the CLA.

39.  As in the earlier audit of Biwin, SD-3C's audit team was provided very little documentation to review.  According to Wintek, sales orders are placed via Internet or phone and sales representatives input these orders into an Excel file. Sales invoices are generated in Excel and sent electronically to Wintek's outside accountant for purposes of recording sales activity.  The outside accountant is also tasked with accounts payable, accounts receivable, and purchase orders.  These

CIVIL COMPLAINT FOR BREACH OF
CONTRACT AND INFRINGEMENT

1   records were not provided to the auditors.  The auditors also requested, but were not

2   provided, an income statement for CY 2010.   Wintek also could not produce

3   supporting shipping documentation or manufacturer purchase orders.  Thus, sales

4   and royalties were almost impossible to verify or analyze.

5       40.  In addition to the absence of essential business records, Wintek also

6   advised the auditors that it did not have a formal royalty reporting system.  Wintek

7   told the auditors that it relied on its outside accountant to notify Wintek's sales

8   personnel of reportable SD card sales, which would prompt Wintek to prepare a

9   quarterly royalty statement.

10      41.  Although required by CLA § 7.6 to keep and maintain accurate books

11  and records, Wintek did not provide even the most basic financial statements or

12  records to SD-3C's auditors.  The failure to keep and produce for inspection

13  detailed financial records relating to the sale of SD cards is a material violation of

14  Section 7.6 of the CLA.

15      42.  Based on the Excel-generated sales invoices the auditors were provided,

16  the auditors still identified significant gaps and irregularities in the information that

17  they did receive.  For example, numerous sequential invoice numbers were simply

18  missing and unaccounted for; Wintek could not provide copies of any cancelled

19  sales invoices or any other acceptable explanation for these missing invoices.  For

20  the invoices that were provided, the lack of supporting documentation made it

21  impossible to verify whether the product information reflected on the sales invoices

22  were correct.  At least one anecdotal example of an auditor's purchase of SD cards

23  (made anonymously prior to the audit) was revealed to have been intentionally

24  misdescribed in the sales invoice provided at the audit as "CF" (CompactFlash)

25  cards, for which no SD card sale was reported or royalty paid to SD-3C in Wintek's

26  quarterly royalty report.

27      43.  Based upon the auditors' review of the documentation provided, they

28  determined that a substantial portion of sales identified as "CF cards" were, in fact,

CIVIL COMPLAINT FOR BREACH OF
CONTRACT AND INFRINGEMENT

disguised sales of SD cards that Wintek intentionally misdescribed in an effort to under-report royalties due to SD-3C under the CLA.  SD-3C's auditors extrapolated the results of their review of Wintek's licensed SD card sales activity to the sales records provided and estimated that Wintek owed SD-3C approximately $1 million for unreported licensed SD card sales, late payment interest, and audit expenses.

44.  SD-3C's representatives presented the audit conclusions to Wintek's Operations Manager, Yan Chen, and other personnel in a meeting on May 20, 2011. Wintek disputed the audit results, refused to answer direct questions about masking SD card sales as CF card sales, and refused to pay any additional royalties.

45.  On May 20, 2011, SD-3C notified Wintek that its CLA would be terminated in 60 days unless Wintek agreed to correct its royalty reporting and to make all of its financial records available for further inspection.  A copy of SD-3C's Notice of Termination is attached hereto as Exhibit 7.

46.  On July 19, 2011, SD-3C sent Wintek a letter confirming its termination as a licensee and directed Wintek to immediately return to SD-3C all copies of the SD Group Specification Books and the SD Logo Guideline in its control or possession, and to destroy any electronic copies of those materials as might exist on Biwin's computers or servers pursuant to CLA § 14.2.  Wintek refused to comply with this demand, which constitutes an additional, material breach of the CLA.  A copy of this July 19, 2011 letter is attached hereto as Exhibit 8.

47.  On information and belief, Biwin and Wintek continue to illegally manufacture, sell, and distribute very large numbers of SD cards, miniSD cards, microSD cards, and related memory card products in violation of SD-3C's intellectual property rights in a global scheme to avoid paying SD-3C a proper royalty for such sales.

CIVIL COMPLAINT FOR BREACH OF
CONTRACT AND INFRINGEMENT

# FIRST CLAIM FOR RELIEF

## Breach of Contract-Biwin

48.  SD-3C incorporates and alleges again, as though fully set forth herein, the facts and allegations stated in paragraphs 1-46 of the Complaint.

49.  Pursuant to the terms of the CLA, Biwin agreed, among other things, to pay SD-3C a Royalty as detailed in Section 7 and in Schedule E of that agreement, to observe the trademark and logo guidelines set forth in the CLA, to maintain accurate books and records, and to permit SD-3C to perform audits upon reasonable notice and on demand.

50.  Pursuant to Section 15.6 of the CLA, Defendants also expressly submitted to the jurisdiction of this Court to resolve any dispute arising under the license agreement with SD-3C and agreed to accept service of process in any such dispute by mail or personal delivery.

51.  Based upon the results of the 2009 audit of Biwin and subsequent investigation into Biwin's SD card manufacturing and sales activities, SD-3C estimates that Biwin actually owes SD-3C at least $1,000,000 in unpaid royalties, late payment interest, and audit fees and expenses.  The actual amount of unpaid royalties owed by Biwin is likely to be far in excess of that amount and will be determined with greater accuracy during the discovery process.  Late payment interest applied to the unpaid royalties owed to SD-3C continues to accrue.

52.  Biwin continues through the present to manufacture, sell, and distribute products using SD-3C's patents and SD Trademarks without paying any royalties due to SD-3C under the CLA.  The amount of unpaid royalties owed to SD-3C since Biwin's termination as a licensee is not known at present but will be determined with greater accuracy during the discovery process.

53.  Biwin has repeatedly breached the CLA by failing to perform material obligations under that agreement.  Biwin's breaches include, but are not limited to: the nonpayment of royalties pursuant to the terms of the CLA; failure to maintain

CIVIL COMPLAINT FOR BREACH OF
CONTRACT AND INFRINGEMENT

1    accurate books and records with regard to sales information and royalty payment

2    calculations; destruction of records relating to SD card sales; failure to make timely

3    and accurate quarterly royalty reports and payments to SD-3C; continued sale of

4    SD cards and related products without paying required royalties; making unreported

5    and uncompensated sales of SD cards and related products that infringe upon SD-

6    3C's trademark rights; failure to make payment of the overdue royalty amounts and

7    audit expenses identified in the 2009 audit; and failure to immediately return to SD-

8    3C all copies of the SD Group Specification Books and the SD Logo Guideline in

9    its control or possession, and to destroy any electronic copies of those materials as

10   might exist on Biwin's computers or servers.  These material breaches of the CLA

11   constitute willful misconduct and demonstrate Biwin's intention to conceal the true

12   extent of its SD card business from SD-3C.

13       54.  Based upon the 2009 audit and available information regarding Biwin's

14   manufacture and sale of memory cards, SD-3C estimates that as a direct and

15   proximate result of Defendants' breaches of the CLA, SD-3C has suffered

16   substantial damages in an amount to be proved at trial, but that is in no event less

17   than $1,000,000 and is likely to exceed several times that amount.

18                          **SECOND CLAIM FOR RELIEF**

19                          **Breach of Contract-Wintek**

20       55.  SD-3C incorporates and alleges again, as though fully set forth herein,

21   the facts and allegations stated in paragraphs 1-53 of the Complaint.

22       56.  Pursuant to the terms of the CLA, Wintek agreed, among other things, to

23   pay SD-3C a Royalty as detailed in Section 7 and in Schedule E of that agreement,

24   to observe the trademark and logo guidelines set forth in the CLA, to maintain

25   accurate books and records, and to permit SD-3C to perform audits upon reasonable

26   notice and on demand.

27       57.  Pursuant to Section 15.6 of the CLA, Wintek also expressly submitted to

28   the jurisdiction of this Court to resolve any dispute arising under the license

CIVIL COMPLAINT FOR BREACH OF
CONTRACT AND INFRINGEMENT

1   agreement with SD-3C and agreed to accept service of process in any such dispute

2   by mail or personal delivery.

3       58.   Based upon the results of the 2011 audit of Wintek and investigation

4   into Wintek's and Biwin's SD card manufacturing and sales activities, SD-3C

5   estimates that Wintek actually owes SD-3C at least $1,000,000 in unpaid royalties,

6   late payment interest, and audit fees and expenses.  The actual amount of unpaid

7   royalties owed by Wintek is likely to be far in excess of that amount and will be

8   determined with greater accuracy during the discovery process.  Late payment

9   interest owed on the unpaid royalties owed to SD-3C continues to accrue.

10      59.   Wintek continues through the present to manufacture, sell, and distribute

11  products using SD-3C's patents and SD Trademarks without paying any royalties

12  due to SD-3C under the CLA.  The amount of unpaid royalties owed to SD-3C

13  since Wintek's termination as a licensee is not known at present but will be

14  determined with greater accuracy during the discovery process.

15      60.   Wintek has repeatedly breached the CLA by failing to perform material

16  obligations under that agreement.  Wintek's breaches include, but are not limited to:

17  the nonpayment of royalties pursuant to the terms of the CLA; failure to maintain

18  accurate books and records with regard to sales information and royalty payment

19  calculations; destruction of records relating to SD card sales; failure to make timely

20  and accurate quarterly royalty reports and payments to SD-3C; continued sale of

21  SD cards and related products without paying required royalties; making unreported

22  and uncompensated sales of SD cards and related products that infringe upon SD-

23  3C's trademark rights; failure to make payment of the overdue royalty amounts and

24  audit expenses identified in the 2009 audit; and failure to immediately return to SD-

25  3C all copies of the SD Group Specification Books and the SD Logo Guideline in

26  its control or possession, and to destroy any electronic copies of those materials as

27  might exist on Wintek's computers or servers.  These material breaches of the CLA

28

CIVIL COMPLAINT FOR BREACH OF
CONTRACT AND INFRINGEMENT

1    constitute willful misconduct and demonstrate Wintek's intention to conceal the

2    true extent of its SD card business from SD-3C.

3         61.  Based upon the 2011 audit and available information regarding

4    Wintek's manufacture and sale of memory cards, SD-3C estimates that as a direct

5    and proximate result of Defendants' breaches of the CLA, SD-3C has suffered

6    substantial damages in an amount to be proved at trial, but that is in no event less

7    than $1,000,000 and is likely to exceed several times that amount.

8                            **THIRD CLAIM FOR RELIEF**

9                                       **Fraud**

10        62.  SD-3C incorporates and alleges again, as though fully set forth herein,

11   the facts and allegations stated in paragraphs 1-60 of the Complaint.

12        63.  In order to induce SD-3C to enter the CLA with Biwin, Biwin

13   promised to perform all of its obligations under the CLA, including, without

14   limitation, that Biwin would timely submit accurate quarterly royalty reports and

15   pay SD-3C all royalties owed.  Biwin made this promise to induce SD-3C to license

16   the intellectual property rights that Biwin needed to manufacture and sell SD

17   memory cards and related products.

18        64.  SD-3C is informed and believes, and on that basis alleges, that Biwin

19   concealed its true plans to enter into the CLA with SD-3C to obtain the valuable

20   license of intellectual property rights without ever intending to perform certain of

21   its obligations under the CLA, including the obligations to accurately report SD

22   card sales and pay royalties owed to SD-3C.

23        65.  Having undertaken to supply SD-3C with timely quarterly royalty

24   reports and payments for all compensable sales of SD Memory Card products,

25   Biwin had a duty to provide truthful and accurate information regarding its sales

26   and the royalties that it owed SD-3C, and not to omit material information

27   regarding such sales and royalties owed.

28

CIVIL COMPLAINT FOR BREACH OF
CONTRACT AND INFRINGEMENT

66. As set forth above, and in furtherance of its deception, between April 2006-June 2009, Biwin submitted quarterly reports to SD-3C that consistently represented that Biwin made only modest sales of SD Flash Memory Cards and owed SD-3C only nominal royalties. These representations were laid false during the 2009 audit and 2010 investigation of Biwin, which revealed a massive SD card manufacturing, distribution, and sales operation.

67. To further disguise its deception, Biwin organized a confederate corporate alter ego, Wintek, to seek and obtain a new CLA from SD-3C after Biwin's license was terminated. Biwin and Wintek sought the CLA from SD-3C to provide a patina of legitimacy and to disguise the companies' illegal operations. At the time Wintek approached SD-3C seeking a license, Wintek omitted its affiliations with Biwin (a recently terminated licensee), including its shared offices and common owners/directors. Wintek intentionally omitted this material information so as to induce SD-3C to extend Wintek a license in good faith.

68. Biwin and Wintek, in an effort to fraudulently conceal their deceptions, knowingly made false representations of material fact in their quarterly royalty reports to SD-3C concerning sales of SD Memory Card products.

69. Biwin and Wintek made these false representations and omissions of material fact intentionally, willfully, and knowingly in order to deceive SD-3C into contracting with the two companies in the first instance and to avoid their payment and reporting obligations under the CLA.

70. At the time Biwin and Wintek made these false representations and omissions, SD-3C was unaware of their falsity and reasonably believed the companies to be honest and dealing in good faith. SD-3C reasonably relied upon Biwin's and Wintek's knowing misrepresentations and omissions until SD-3C's representatives revealed the fraud after the audits and investigations described herein.

CIVIL COMPLAINT FOR BREACH OF
CONTRACT AND INFRINGEMENT

71.    As a direct and proximate result of the foregoing, SD-3C has suffered and continues to suffer substantial damages in an amount to be proved at trial, but that is in no event less than $1,000,000 and is likely to exceed several times that amount.  Further, as a direct result of Biwin's and Wintek's willful and fraudulent conduct, which was done with a callous and conscious disregard for SD-3C's rights and designed to cause injury to SD-3C, SD-3C is entitled to an award of exemplary or punitive damages in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF

## Trademark Infringement, 15 U.S.C. § 1114

72.    SD-3C incorporates and alleges again, as though fully set forth herein, the facts and general allegations stated in paragraphs 1-70 of the Complaint.

73.    SD-3C owns and maintains multiple trademarks and registrations for its famous SD Trademarks in numerous countries throughout the world, including the following U.S. trademark registrations for the principal SD mark, which is registered in the following logo format: **SD**

- Reg. No.  2,772,831, issued October 14, 2003, for data storage media, namely integrated circuit memory cards; integrated circuits; semiconductors; integrated circuit memory card readers and writers; personal computers; audio recorders, audio players, video recorders, digital cameras, video cameras, all using integrated circuit memory cards; computer game players, namely computer game equipment containing memory devices, namely integrated circuit memory cards; printers for computers, daisy wheel printers, dot matrix printers, impact laser printers, color printers, video printers, ink jet printers , bubble jet printers; mobile telephones; television sets; satellite global positioning systems; and integrated circuit memory cards"

- Reg. No. 2,384,407, issued September 12, 2000, for "prerecorded optical discs of computer games; computer game players" and for

- 18 -

"blank optical discs for recording and reproducing of sound, image, computer games, computer programs and map information; optical discs pre-recorded in the areas of entertainment, the arts, science, education, business and map information; optical disc players; optical disc recorders; optical disc players and recorders for navigation system; color television sets; computers; machines for recording, reproducing and searching documents on optical discs."

- Reg. No. 3,088,999, issued May 9, 2006, for "data storage media, namely, integrated circuit memory cards; integrated circuits; semiconductors, integrated circuit memory card readers and writers; personal computers; audio recorders, audio players, video recorders, digital cameras, video cameras, all using IC memory cards; computer game players, namely computer game equipment containing memory devices, namely, IC memory cards; printers for computers, daisy wheel printers, dot matrix printers, impact laser printers, color printers, video printers, ink jet printers, bubble jet printers; mobile telephones; television sets; satellite global positions systems (GPS); integrated circuit memory cards."

74.     Some of SD-3C's SD Trademarks are incontestable under 15 U.S.C. § 1115(b), which constitutes conclusive evidence of SD-3C's ownership of, and exclusive right to use, the "SD" name and mark in commerce in connection with the goods and services set forth therein.

75.     On information and belief, Defendants continue to distribute, advertise, sell and offer for sale products bearing SD-3C's SD Trademarks in the United States and abroad, despite SD-3C's termination of Biwin's license in August 2009 and Wintek's license in July 2011.   SD-3C does not license or otherwise authorize Defendants to distribute, advertise, or sell any SD memory card

1   product(s) absent an appropriate license agreement granting either company the

2   rights to do so. Thus, Defendants are infringing upon SD-3C's SD Trademarks.

3        76.    The use by Defendants of the SD Trademarks in connection with the

4   use, manufacture, and distribution of memory card products, including on the

5   Internet, infringes upon SD-3C's registered SD Trademarks and is likely to cause

6   confusion or deception of customers as to the source of origin or sponsorship of the

7   products, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

8   Customers are likely to purchase Defendants' products bearing the SD Trademarks

9   believing them to be manufactured and distributed in accordance with the SD

10   specifications and under the authority of SD-3C.

11        77.    The value of SD-3C's SD Trademarks is subject to damage and

12   dilution by Defendants as a result of their continued unauthorized use of the SD

13   Trademarks.

14        78.    Defendants' continued acts of infringement as alleged herein

15   have been undertaken with knowledge of SD-3C's exclusive rights to the SD

16   Trademarks. Defendants' infringement of the SD Trademarks is willful.

17   Defendants were properly notified that their licenses were terminated and that they

18   no longer have the right to use the SD Trademarks.

19        79.    Pursuant to Section 15.6 of the CLA, Defendants also expressly

20   submitted to the jurisdiction of this Court to resolve any dispute arising under the

21   license agreement with SD-3C and agreed to accept service of process in any such

22   dispute by mail or personal delivery.

23        80. SD-3C's business under its SD Trademarks is of great value.

24   Defendants' infringing conduct has caused, and if not enjoined will continue to

25   cause, irreparable harm and damage SD-3C's SD Trademarks and to SD-3C's

26   business, reputation, and goodwill. SD-3C has no adequate remedy at law.

27

28

CIVIL COMPLAINT FOR BREACH OF
CONTRACT AND INFRINGEMENT

## FIFTH CLAIM FOR RELIEF

### Federal Unfair Competition and False Designation of Origin, 15 U.S.C. § 1125

81.     SD-3C incorporates and alleges again, as though fully set forth herein, the facts and general allegations stated in paragraphs 1-79 of the Complaint.

82.     Defendants' use of the SD Trademarks, including on the Internet, constitutes unfair competition and a false designation of origin which is likely to deceive customers and prospective customers into believing that Defendants' products are those of SD-3C's Members or licensees, in violation of Section 43(a) of the Lanham Act.

83.     Defendants' actions are likely to cause confusion or mistake among the public as to the true origin and sponsorship of the SD Card products, to confuse the public into believing that Defendants' products have the approval of SD-3C and its Members, and constitute unfair competition in violation of Section 43(a) of the Lanham Act.

84.     Any failure, neglect or default by Defendants in providing high quality products will reflect adversely on SD-3C, its Members, and its licensees as the believed source of origin thereof.  This activity hampers efforts by SD-3C to continue to protect its Members' and licensees' outstanding reputation for high quality products and will result in loss of sales by SD-3C's Members and licensees, all to the irreparable harm of SD-3C.

85.     Pursuant to Section 15.6 of the CLA, Defendants also expressly submitted to the jurisdiction of this Court to resolve any dispute arising under the license agreement with SD-3C and agreed to accept service of process in any such dispute by mail or personal delivery.

86.     Defendants' continued false representation and designation is with full knowledge of SD-3C's exclusive rights in and to its SD Trademarks, and such acts are made in conscious disregard of SD-3C's rights.  Unless enjoined by this Court from so doing, Defendants will continue to engage in acts of false representation

CIVIL COMPLAINT FOR BREACH OF
CONTRACT AND INFRINGEMENT

1   and designation as complained of herein, to the irreparable damage and injury of

2   SD-3C.

3                            **SIXTH CLAIM FOR RELIEF**

4            **Unfair Competition, Cal. Bus. & Prof. Code §17200**

5           87.    SD-3C incorporates and alleges again, as though fully set forth herein,

6   the facts and general allegations stated in paragraphs 1-85 of the Complaint.

7           88.    Defendants have used and are using the SD Trademarks in connection

8   with the advertising and sale of products in the State of California in an unlawful,

9   unfair and fraudulent manner so as to create a likelihood of confusion among

10  prospective purchasers as to the source of the goods, which acts have damaged,

11  impaired, and diluted the goodwill symbolized by SD-3C's name and marks, to its

12  immediate and irreparable damage.

13          89.    Defendants' actions are likely to cause confusion or mistake among

14  the public as to the true origin and sponsorship of the SD Card products, to confuse

15  the public into believing that Defendants' products have the approval of SD-3C and

16  its Members, and constitute unfair competition in violation of Cal. Bus. & Prof.

17  Code §17200.

18          90.    Upon information and belief, as a direct and proximate result of

19  Defendants' unfair and unlawful actions, Defendants have been unjustly enriched at

20  SD-3C's expense.

21          91.    Pursuant to Section 15.6 of the CLA, Defendants also expressly

22  submitted to the jurisdiction of this Court to resolve any dispute arising under the

23  license agreement with SD-3C and agreed to accept service of process in any such

24  dispute by mail or personal delivery.

25          92.    Defendants' continued unlawful activities are with full knowledge of

26  SD-3C's exclusive rights in and to its SD Trademarks, and such acts are made in

27  conscious disregard of SD-3C's rights. Unless enjoined by this Court from so

28

CIVIL COMPLAINT FOR BREACH OF
                                         CONTRACT AND INFRINGEMENT

1  doing, Defendants will continue to engage in acts of unfair competition as

2  complained of herein, to the irreparable damage and injury of SD-3C.

3  ### PRAYER FOR RELIEF

4  **WHEREFORE**, Plaintiff SD-3C, LLC respectfully requests that the Court:

5  A.   Award SD-3C contract damages in an amount in excess of $1,000,000,

6  or such amount as may be proven at trial;

7  B.   Award SD-3C treble its actual damages, plus its attorneys' fees in

8  bringing and maintaining this action, pursuant to Section 35(b) of the Trademark

9  Act, 15 U.S.C. § 1117(b);

10  C.   Grant a permanent injunction against the continued infringement of

11  SD-3C's SD Trademarks by Defendants and their respective officers, agents,

12  servants, employees, attorneys, successors, assigns;

13  D.   Order an accounting to determine and assess against Defendants, and

14  award to SD-3C, damages arising out of infringement of the SD Trademarks

15  (including but not limited to all of Defendants' profits for their sale of infringing

16  products);

17  E.   Because of the willful and deliberate nature of the conduct complained

18  of herein that Defendants be held jointly and severally liable and ordered to pay

19  punitive damages in an amount sufficient to deter such conduct in the future;

20  F.   Award SD-3C its costs and reasonable attorneys' fees incurred in this

21  action; and

22

23

24

25

26

27

28

CIVIL COMPLAINT FOR BREACH OF
CONTRACT AND INFRINGEMENT

1    G.    Grant SD-3C such other and further relief as the Court deems just and

2  proper.

3  Dated:  January 25, 2012                    ARENT FOX LLP

4

5

6  By: _____
   JERROLD ABELES
7  Attorneys for Plaintiff
   SD-3C, LLC

8  *Of counsel*

9  Pamela M. Deese
   Matthew M. Wright
10 Arent Fox LLP
   1050 Connecticut Avenue, NW
11 Washington, DC 20036-5339

12 *(Pro hac vice applications pending)*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 24 -                          CIVIL COMPLAINT FOR BREACH OF
                                CONTRACT AND INFRINGEMENT

LDR/365544.5