**United States District Court**
**For the Northern District of California**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SD-3C, LLC, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> BIWIN TECHNOLOGY LTD, et al., ) <br> ) <br> Defendants. ) <br> ) <br> ) | Case No. 5:12-cv-00407-PSG <br><br> **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AS TO COMPANY DEFENDANTS AND REASSIGNING CASE WITH REPORT AND RECOMMENDATION THAT SUMMARY JUDGMENT BE GRANTED AS TO INDIVIDUAL DEFENDANTS** <br><br> **(Re: Docket No. 104)** |

Plaintiff SD-3C, LLC, moves for summary judgment or, in the alternative, default judgment against Defendants Biwin Technology Ltd., Wintek Enterprises Ltd. (the "Company Defendants"), Sun Rixin, Zhou Zhengxian, Lu Wei and Xu Linxian (the "Individual Defendants"). As the Company Defendants have not participated in the case since July 2013 and the Individual Defendants have never appeared in the case, the motion is unopposed. The court GRANTS SD-3C's motion for summary judgment as to the Company Defendants and orders that the case be reassigned with a report and recommendation that summary judgment be granted as to the Individual Defendants as well.

1
Case No. 5:12-00407-PSG
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AS TO COMPANY
DEFENDANTS AND REASSIGNING CASE WITH REPORT AND RECOMMENDATION
THAT SUMMARY JUDGMENT BE GRANTED AS TO INDIVIDUAL DEFENDANTS

**I.**

This is a case about a licensing agreement gone awry. In 2006, Biwin sought a license for patents and related intellectual property to manufacture and sell SD memory cards for use in digital cameras and related devices.[1] The terms of the card license agreement ("CLA") required Biwin to make accurate quarterly sales reports and pay SD-3C a six percent royalty on its SD card sales.[2] Over the course of the next two years, SD-3C grew skeptical about Biwin's sales reporting and—in line with the CLA—conducted an audit to review Biwin's financial records.[3] Biwin's financial records painted an incomplete picture but were adequate to establish that Biwin had underreported and concealed its true SD card manufacturing and sales operations to avoid paying SD-3C the full royalty to which it was due.[4] SD-3C terminated Biwin's license on August 22, 2009.[5]

Just a few months later, Wintek—Biwin's alter ego—entered the scene and approached SD-3C for a CLA of its own—which was promptly granted—without informing SD-3C of its affiliation with Biwin.[6] In fact, the relationship between Biwin and Wintek is extensive: they are owned and operated by the same four individuals—the Individual Defendants—they share personnel and addresses in China and Hong Kong and orders for SD cards placed with one company are routinely filled by the other.[7]

Nearly three years after SD-3C terminated Biwin's CLA, SD-3C discovered that Biwin was still claiming to produce SD cards pursuant to a valid license agreement—a claim that has not yet been withdrawn to this day.[8] And in deposition, Joseph James—Biwin America's former marking

---

[1] *See* Docket No. 64 at ¶¶ 11-13, 15.

[2] *See id.*

[3] *See id.* at ¶¶ 20-26.

[4] *See id.*

[5] *See id.* at ¶ 28.

[6] *See id.* at ¶ 38.

[7] *See id*. at ¶¶ 4-8, 56-61.

[8] *See id.* at ¶ 35.

2
Case No. 5:12-00407-PSG
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AS TO COMPANY
DEFENDANTS AND REASSIGNING CASE WITH REPORT AND RECOMMENDATION
THAT SUMMARY JUDGMENT BE GRANTED AS TO INDIVIDUAL DEFENDANTS

director—testified that as recently as 2012, Biwin was still manufacturing two million SD cards each month, representing between ten and thirty-three percent of the company's total revenues.[9]

As a result of Biwin's ongoing breach of the CLA, SD-3C filed its initial complaint on January 25, 2013 alleging breach of contract, fraud, trademark infringement and unfair competition under both the Lanham Act and under California law.[10] SD-3C was only able to effect service on Biwin and Wintek through the Hague Convention in September 2012, at which point the complaint had evolved into a Third Amended Complaint.[11] Biwin and Wintek answered that complaint and defended the lawsuit through July 2013, when SD-3C sought leave and filed a Fourth Amended Complaint—adding the Individual Defendants, two additional counts of trademark counterfeiting and civil conspiracy and specific facts learned through discovery.[12] Within two weeks of SD-3C amending its complaint, Biwin and Wintek ceased participation in the lawsuit. Their counsel sought leave to withdraw—which was granted by this court—and neither Company Defendants nor Individual Defendants answered the operative complaint.[13] SD-3C now moves for summary judgment or, in the alternative, default judgment against all Defendants.

## II.

This court has jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1332 and 28 U.S.C. § 1338. SD-3C and the Company Defendants further consent to the jurisdiction of the undersigned under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).[14]

---

[9] *See* Docket No. 104-4 at 24-28.

[10] *See* Docket No. 1 at ¶¶ 48-92.

[11] *See* Docket No. 18.

[12] *See* Docket Nos. 26, 28, 64.

[13] *See* Docket No. 85.

[14] The Individual Defendants have not entered an appearance and thus have not consented to the jurisdiction of the undersigned. A report and recommendation as to the Individual Defendants thus is included within this order, together with an order that the claims against the Individual Defendants be reassigned.

3
Case No. 5:12-00407-PSG
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AS TO COMPANY
DEFENDANTS AND REASSIGNING CASE WITH REPORT AND RECOMMENDATION
THAT SUMMARY JUDGMENT BE GRANTED AS TO INDIVIDUAL DEFENDANTS

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Material facts are those that may affect the outcome of the case.[15] A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.[16] All evidence must be viewed in the light most favorable to the non-moving party. At this stage, a court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial."[17] Initially, the moving party bears the burden to show that no genuine issue of material fact exists.[18] If this burden is met, the burden shifts to the non-moving party.[19]

Pursuant to Fed. R. Civ. P. 55(b)(2), the court may enter default judgment against a defendant who has failed to plead or otherwise defend an action.[20] "The district court's decision whether to enter default judgment is a discretionary one."[21]

## III.

As an initial matter, SD-3C asks this court to grant summary judgment, or in the alternative, default judgment. This court finds that default judgment would likely otherwise be appropriate but ultimately is not viable here. While Biwin and Wintek answered the third amended complaint,[22] neither the Company Defendants nor the Individual Defendants—who were added for the first time

---

[15] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.").

[16] *See id.*

[17] *House v. Bell*, 547 U.S. 518, 559-60 (2006).

[18] *See Celotex Corp. v. Caltrett*, 477 U.S. 317, 323-24 (1986).

[19] *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 630, 630 (9th Cir. 1987).

[20] Fed. R. Civ. P. 55(b)(2).

[21] *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

[22] *See* Docket Nos. 26, 28.

in the Fourth Amended Complaint—answered the operative complaint. In fact, Biwin and Wintek stopped paying their attorneys, leading this court to grant Defendants' lawyers leave to withdraw from the case.[23] Ultimately, Defendants ceased participating in the litigation in or around July 2013. Although Biwin and Wintek responded to the third amended complaint, "[a]n amended complaint supersedes the original, the latter being treated thereafter as nonexistent."[24] This case thus falls within the ambit of default judgment consideration, but SD-3C failed to follow the proper procedure to seek default judgment from this court. In the Ninth Circuit, Federal Rule of Civil Procedure 55[25] "requires a two-step process consisting of: (1) seeking a clerk's entry of default, and (2) filing a motion for the entry of default judgment."[26] SD-3C has skipped straight to step two.

---

[23] *See* Docket No. 85.

[24] *Brantley v. Boyd*, Case No. 07-cv-06139, 2013 WL 3766911, at *6 (N.D Cal. July 16, 2013) (citing *Lacey v. Maricopa Cnty.*, 649 F. 3d 1118, 1137 (9th Cir. 2011) (internal citation and quotation omitted)); *Employee Painters' Trust v. Ethan Enters.*, 480 F.3d 993, 999-1000 (9th Cir. 2007) (default judgment proper where defendant failed to answer amended complaint even after filing an answer to original complaint and disputing counterclaim).

[25] Fed. R. Civ. P. 55(a)-(b):

> (a) Entering a Default. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.
> (b) Entering a Default Judgment.
>> (1) By the Clerk. If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.
>> (2) By the Court. In all other cases, the party must apply to the court for a default judgment.

[26] *Marty v. Green*, Case No. 10-cv-01823, 2011 WL 320303, at *3 (E.D. Cal. Jan. 28, 2011) (internal quotation marks omitted); *see Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986) ("Eitel apparently fails to understand the two-step process required by Rule 55"); *accord Symantec Corp. v. Global Impact, Inc.*, 559 F.3d 922, 923 (9th Cir. 2009) (noting that Rules 55(1) and (b) provide a two-step process for obtaining a default judgment); *see also Norman v. Small*, Case No. 09-cv-02235, 2010 WL 5173683, at *2 (S.D. Cal. Dec. 14, 2010) (denying plaintiff's motion for default judgment because the clerk had not yet entered a default); *Cramer v. Target Corp.*, Case No. 08-cv-01693, 2010 WL 2898996, at *1 (E.D. Cal. July 22, 2010) ("Obtaining a default judgment in federal court is a two-step process that includes: (1) entry of default and (2) default judgment."); *Bach v. Mason*, 190 F.R.D 567, 574 (D. Idaho 1999) ("Plaintiffs have improperly

Notably, SD-3C's motion for summary judgment is unopposed. While "[a] district court may not grant a motion for summary judgment solely because the opposing party has failed to file an opposition,"[27] "[t]he court may . . . grant an unopposed motion for summary judgment if the movant's papers are themselves sufficient to support the motion and do not on their face reveal a genuine issue of material fact."[28] The court finds that SD-3C has sufficiently established its case to warrant granting the motion as to each of its four causes of action: (1) breach of contract, (2) trademark infringement and counterfeiting, (3) unfair competition and (4) fraud.

*First*, regarding the breach of contract claim, it is undisputed that Biwin and Wintek entered CLAs with SD-3C, establishing the existence of the contract itself.[29] SD-3C also provided Defendants with the license, as required under the CLAs.[30] Biwin and Wintek underreported their manufacturing and sales activities as required under the CLAs—a material breach—incenting SD-3C to terminate the CLAs.[31] Finally, SD-3C claims damages based on royalty payments due under the CLAs and attorneys' fees and other expenses incurred as a result of Defendants' breaches.[32] Based on the record before the court, there is no material dispute that Defendants in fact breached their contract with SD-3C.[33]

---

asked this court to enter a default judgment without first obtaining an entry of default by the clerk. Since plaintiffs' motion for entry of default judgment is improper, it is denied.").

[27] *McColm v. San Francisco Hous. Auth.*, Case No. 02-cv-05810, 2007 WL 1575883, at *10 (citing *Cristobal v. Siegel*, 26 F.3d 1488, 1494-95 & n.4 (9th Cir. 1994)).

[28] *Id.* (citing *United States v. Real Property at Incline Village*, 47 F.3d 1511, 1520 (9th Cir. 1995) (local rule cannot mandate automatic entry of judgment for moving party without consideration of whether motion and supporting papers satisfy Fed. R. Civ. P. 56)).

[29] *See* Docket No. 64 at ¶¶ 62-68; Docket No. 105-9 at Attachment 2; Docket No. 104-2 at Nos. 3-4, 91-97, 101-102; Docket No. 104-3 at Nos. 1-2, 31-41.

[30] *See id.*

[31] *See* Docket No. 64 at ¶¶ 62-68. In light of Defendants' failure to respond to the Fourth Amended Complaint, there is no dispute as to the allegations pleaded therein and they are deemed admitted. *See* Fed. R. Civ. P. 55(a).

[32] *See id.* at ¶¶ 62-75 (claiming at least $12,900,000 in unpaid royalties based on a 2009 audit and available information about Biwin's manufacture and sale of memory cards).

[33] Any award of damages is discussed below.

6
Case No. 5:12-00407-PSG
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AS TO COMPANY DEFENDANTS AND REASSIGNING CASE WITH REPORT AND RECOMMENDATION THAT SUMMARY JUDGMENT BE GRANTED AS TO INDIVIDUAL DEFENDANTS

*Second*, SD-3C's trademark infringement and counterfeiting claims are equally undisputed. Under the Lanham Act, a plaintiff can establish a trademark infringement cause of action by showing (1) ownership of the mark by the plaintiff, (2) use by the defendant without consent of the owner and (3) of a mark which is likely to cause confusion in the marketplace.[34]  SD-3C owns and maintains multiple trademarks and registrations for its well-known SD products in many countries, including the United States.[35]  Pursuant to 15 U.S.C. § 1115(b), such trademarks constitute incontestable evidence of SD-3C's ownership of, and exclusive right to use, the SD name and mark related to flash memory devices and other associated goods and services.[36]  This evidence is sufficient to establish prong one under the Lanham Act.

As for prong two, while Biwin and Wintek were authorized to manufacture and sell SD flash technology during the pendency of the CLAs, upon termination, that authority was nullified.[37] But Biwin and Wintek were unrelenting and continued to produce and sell technology bearing the SD trademark long after SD-3C revoked its consent—the hallmark of trademark infringement.[38]

SD-3C further contends that Biwin and Wintek's unauthorized actions constitute trademark counterfeiting under 15 U.S.C § 1114(1)(a)—where the infringer uses "a counterfeit of a mark that is registered on the principal register of the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use."[39]  Here, Biwin and

---

[34] *See Dep't of Parks & Rec. v. Bazaar Del Mundo, Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006).

[35] *See* Docket No. 64 at ¶ 91.

[36] *See id*. at ¶ 92; 15 U.S.C. § 1115(b); *see also Brookfield Comm'ns v. West Coast Entm't*, 174 F.3d 1036, 1046-48, n.10 (9th Cir. 1999) (the "validity and legal protectability, as well as the [registrant's] ownership therein, are all conclusively presumed," when a mark's registration becomes incontestable.).

[37] *See* Docket No. 64 at ¶¶ 62-68.

[38] *See id.* at ¶ 81; *State of Idaho Potato Comm'n v. G&T Terminal*, 425 F.3d 708, 721 (9th Cir. 2005); *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1190-92 (6th Cir. 1997) ("proof of continued, unauthorized use of an original trademark by one whose license to use the trademark had been terminated is sufficient to establish 'likelihood of confusion'").

[39] 15 U.S.C. § 1116(d)(1)(B).

Wintek have manufactured and sold products bearing marks that are substantially indistinguishable from SD-3C's SD trademarks—as evidenced by shipments of Biwin products that have been seized as counterfeit by customs authorities in various countries, including the United States.[40] Because many of these facts are substantiated by Biwin and Wintek's own admissions, the court cannot see any dispute that Defendants are liable for trademark infringement and counterfeiting.

The third prong requires that the counterfeited SD cards are likely to confuse consumers as to their source, origin, association or connection. Given the prolific name that SD has nationally and internationally, and the almost indistinguishable nature of the counterfeited products, there is no genuine dispute that it is sufficiently likely that consumers would attribute Biwin and Wintek products bearing the SD trademark to in fact be licensed or owned by SD.[41] Altogether, the court can find no dispute that Defendants' actions infringed on and diluted SD-3C's trademarks.[42]

***Third***, SD-3C is entitled to summary judgment on its unfair competition claim. This claim requires that a plaintiff establish it has a valid, protectable mark and that a defendant's use of that mark creates a likelihood of confusion with plaintiff's mark.[43] This cause of action is substantially similar to that brought under the Lanham Act, such that the reasoning above applies equally to this claim.

---

[40] *See* Docket No. 64 at 29-30, 100-103; Docket No. 104-2 at Nos. 86-89, 101-104; Docket No. 104-3 at Nos. 40-43.

[41] *See Haeger Potteris, Inc. v. Gilner Potteris*, 123 F. Supp. 261, 270 (S.D. Cal. 1954) ("Copying of the product of another, as defendant is doing here, in precise detail as to design, shape and color, and in every other respect than quality, is nothing less than piracy . . . his very act of copying strongly impels the inference that he intends to reap commercial gain by trading on the good will of the first comer"); *Audio Fidelity, Inc. v. High Fidelity Recordings, Inc.*, 283 F.2d 551, 557 (9th Cir. 1960) (when actual copying has been established, the plain inference is that the copier intended to cause confusion).

[42] *See* Docket No. 64 at ¶¶ 94-95; *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979; Docket No. 104-2 at Nos. 1-2, 18-21, 70-78, 101-102; Docket No. 104-3 at Nos. 1, 29-30, 36, 40-41. Any award of damages is discussed below.

[43] *Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991).

*Fourth*, there is no genuine dispute that Biwin and Wintek engaged in fraud by entering into a contract with the undisclosed intention of non-performance. Under California law, a plaintiff must prove four elements to establish fraud: (1) knowingly false misrepresentation by defendant, (2) made with intent to deceive or to induce reliance by plaintiffs, (3) justifiable reliance by plaintiff and (4) resulting damages.[44] As discussed above, Biwin represented to SD-3C that it would perform its obligations under the CLA in return for a license to SD-3C's intellectual property rights.[45] But Biwin concealed its intention to obtain these licensing rights and then misreport its true sales and hide statistics that would illuminate the true royalties owed to SD-3C.[46] The misrepresentation was discovered during the 2009 audit and 2010 investigation into Biwin, which uncovered massive under-reporting of SD memory card manufacturing, distribution and sales operations.[47]

And when SD-3C took action to terminate the CLA, Biwin not only continued producing products bearing a substantially similar mark to SD's mark, but Biwin created a shell alter-ego—Wintek—which approached SD-3C anew to enter into a CLA of its own.[48] Wintek failed to disclose its substantial affiliation with Biwin and the Individual Defendants—shared offices and common owners and directors.[49] SD-3C extended a license to Wintek in good faith and then Wintek proceeded to engage in the same false reporting that had previously led to SD-3C revoking Biwin's license—even going so far as to doctor invoices provided to SD-3C's auditors to hide the actual sales figures of SD cards and to shield Biwin's shell companies from detection by global

---

[44] *Aqua-Lung Am., Inc. v. Am. Underwater Prods., Inc.*, 709 F. Supp. 2d 773, 786 (N.D. Cal. 2010) (citing *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192 (9th Cir. 2001)).

[45] *See* Docket No. 64 at ¶ 77.

[46] *See id.* at ¶ 78.

[47] *See id.* at ¶ 80; *see also* Docket No. 105-9 at Attachment 2.

[48] *See* Docket No. 64 at ¶ 81.

[49] *See id.*

customs officials.[50] There is no dispute that Biwin and Wintek intentionally and knowingly induced SD-3C into the license agreements without any intention to make good on their obligations and that SD-3C incurred damages as a result.[51]

*Fifth*, there is no genuine dispute that the Individual Defendants are jointly and severally liable for the torts alleged against Biwin and Wintek under the alter ego doctrine—which allows for such a finding where a corporation is used by an individual or individuals, or by another corporation, to perpetrate fraud, circumvent a statute or accomplish some other wrong or inequitable purpose.[52] "The alter ego doctrine prevents individual or other corporations from misusing the corporate laws by the device of a sham corporate entity formed for the purpose of committing fraud or other misdeeds,"[53] and it allows a court to "disregard the corporate entity and treat the corporation's acts as if they were done by the persons actually controlling the corporation."[54]

The Lanham Act contemplates that natural persons, as well as corporations, can be liable for trademark infringement because "if there was an infringement by the corporation, this infringement was caused by some one or more persons either officers or employees of the corporation who caused the acts to be done."[55] Moreover, a corporate "officer or director is, in general, personally liable for all torts which he authorizes or directs in which he participates,

---

[50] *See id.* at ¶ 85; *see also* Docket No. 104-2 at No. 97; Docket No. 104-3 at Nos. 37-38.

[51] In California, such fraudulent conduct is separate and independent from the breach itself and causes "actual damage independent of the contract damages." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 991 (2004); *see also Frye v. Wine Library Inc.*, Case No. 06-cv-05399, 2006 WL 3500605, at *2-3 (N.D. Cal. Dec. 4, 2006) (fraud in the inducement alleging harm is independent of the contract).

[52] *Guifu Li v. A Perfect Day Franchise, Inc.*, 281 F.R.D. 373, 402 (N.D. Cal. 2012).

[53] *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 538 (2000).

[54] *Robbins v. Blecher*, 52 Cal. App. 4th 886, 892 (1997).

[55] *Mead Johnson & Co. v. Baby's Formula Serv., Inc.*, 402 F.2d 19 (5th Cir. 1968); 15 U.S.C. §§ 1114, 1127; *see also Wilden Pump & Eng'g Co. v. Pressed & Welded Prods. Co.*, 655 F.2d 984, 990 (9th Cir. 1981) (in analogous patent infringement context, an individual is personally liable if he actively and knowingly causes the infringement).

notwithstanding that he acted as an agent of the corporation and not on his own behalf."[56] As directors of Biwin and Wintek, the Individual Defendants were aware that Biwin and Wintek's CLAs were terminated for non-compliance, yet they continued to direct their companies to manufacture and sell counterfeit SD cards bearing the SD mark.[57] It is undisputed that the Individual Defendants enjoy a direct financial benefit from the infringing activity and that they supervised and directed the illegal acts of their companies.[58]

Under California law, for an individual to be treated as an alter ego of a corporate entity, a plaintiff must show (1) "that there be such a unity of interest and ownership that the separate personalities of the corporation and the individual[s] no longer exist" and (2) that "if the acts are treated as those of the corporation alone, an inequitable result will follow."[59] To determine the requisite unity of interest, California courts consider factors such as inadequate capitalization, commingling of funds and other assets, holding out by one entity that it is liable for the debts of the other, identical equitable ownership, use of the same offices and employees, use of one as a mere conduit for the affairs of the other, disregard of corporate formalities, lack of segregation of corporate records and identical directors and officers.[60] It is undisputed that the Individual Defendants are the owners, managers and/or directors of Biwin, Wintek, Happy Route Ltd. and Great Mover Ltd.[61] and have commingled funds, established equal entity ownership of the former three among the Individual Defendants, used the Biwin offices, employees, equipment, invoicing system and computers as a conduit for the affairs of the other entities and diverted Biwin and

---

[56] *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir. 1985).

[57] *See* Docket No. 64 at ¶¶ 55-61.

[58] *See Comm. For Idaho's High Desert v. Yost*, 92 F.3d 814, 823-24 (9th Cir. 1996) (citing cases that approve vicarious liability of a corporate officer for trademark infringement).

[59] *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 300 (1985) (quoting *Automotriz etc. de Cal. v. Resnick*, 47 Cal. 2d 792, 796 (1957)).

[60] *See Guifu Li*, 281 F.R.D. at 403 (citing *Virtualmagic Asia, Inc. v. Fil-Cartoons, Inc.*, 99 Cal. App. 4th 228, 245 (2002)).

[61] Happy Route Ltd. and Great Mover Ltd.—like Wintek—are shell corporations of Biwin.

Wintek assets to themselves to evade creditors, including SD-3C.[62] These facts are sufficient to support a finding that the Individual Defendants have a unity of interest. And any other finding would improperly condone the practice of using shell corporations to perpetrate fraud and shield individuals from liability.

The court therefore recommends that upon reassignment to a district judge summary judgment as to SD-3C's trademark counterfeiting claims against the Individual Defendants be GRANTED and that the district judge find the Individual Defendants jointly and severally liable for the intentional torts of fraud, trademark infringement, trademark counterfeiting and unfair competition along with the Company Defendants.[63]

*Finally*, SD-3C asks this court for a total of $43,185,148 in damages—including $12,943,555 in unpaid royalties, $978,134 in legal and accounting expenses and $29,263,459 in late payment interest through July 15, 2014.[64] SD-3C engaged an expert—Dr. Michael Quackenbush—to produce a report detailing the damages at issue.[65] Dr. Quackenbush considered all available information from the 2009 audit, the 2010 investigation and any other records SD-3C was able to acquire before Company Defendants ceased participation in the litigation.[66] Based on

---

[62] *See* Docket No. 104-2 at Nos. 5-12, 22-58, 65-69, 80-82, 93-104; Docket No. 104-3 at Nos. 3-22, 27-30, 37-43; Docket No. 64 at ¶¶ 55-61, 85-87.

[63] The undersigned is ordering reassignment to a district judge and issuing a report and recommendation because, absent consent of all parties, a magistrate judge does not have authority to make case-dispositive rulings. *See* 28 U.S.C. § 636 (authorizing magistrate judges to submit "findings of fact and recommendations" to the district judge); *Tripati v. Rison*, 847 F.2d 548, 548-49 (9th Cir. 1988) (noting "a magistrate can prepare a report and recommendation which, after allowing opportunity for objections, a district judge can review" and adopt).

[64] *See* Docket No. 105-9 at Attachment 2. Because the Individual Defendants have not consented to the jurisdiction of the undersigned, the court is only awarding damages as to the Company Defendants at this time.

[65] *See id.*

[66] *See id.*

his undisputed expert report, the court finds Dr. Quackenbush's assessment of damages against the Company Defendants reasonable.[67]

SD-3C also asks this court to impose treble damages or profits. In this district, "[i]n counterfeiting cases, the [c]ourt is required, absent extenuating circumstances to award treble damages or profits, whichever is greater, along with reasonable attorneys' fees."[68] The court sees no extenuating circumstances that would warrant a denial of treble damages, particularly in light of Company Defendants' failure to present any evidence in their defense. Ultimately, this court awards SD-3C damages in the amount of $69,072,258 against Company Defendants.[69]

**SO ORDERED.**

Dated: March 17, 2015

PAUL S. GREWAL
United States Magistrate Judge

---

[67] Upon consideration of Dr. Quackenbush's expert report, the court finds that the damages assessment is based solely on the actions of the Company Defendants in the form of unpaid royalties and interest associated therewith and legal and audit expenses claimed as "contract damages under the terms of the CLA" between SD-3C and the Company Defendants. Docket No. 105-9 at Attachment 2. The damages calculations do not directly implicate the Individual Defendants other than under a theory of joint and several liability. The court thus is free to award damages in the full amount against the Company Defendants.

[68] *Sega Enters. Ltd. v. Maphia*, 948 F. Supp. 923, 941 (N.D. Cal. 1996) (citing 15 U.S.C. § 1117(b)).

[69] This includes trebling of $12,943,555 in unpaid royalties—amounting to $38,830,665—plus reasonable fees of $978,134 and late payment interest of $29,263,459. The court recommends that the district judge find that Individual Defendants be held jointly and severally liable for the entire damages amount as discussed above.

13

Case No. 5:12-00407-PSG
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AS TO COMPANY DEFENDANTS AND REASSIGNING CASE WITH REPORT AND RECOMMENDATION THAT SUMMARY JUDGMENT BE GRANTED AS TO INDIVIDUAL DEFENDANTS